UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 22-20350-CR-ALTMAN

UNITED STATES OF AMERICA,
        Plaintiff,

vs.

OSVALDO GONZALEZ,
        Defendant.
_____/

### OSVALDO GONZALEZ'S OBJECTIONS TO
### PRESENTENCE INVESTIGATION REPORT ("PSI")

The defendant, Osvaldo Gonzalez, respectfully submits the following factual

correction and legal objections to the draft PSI, which was filed at DE 54.[1]

### FACTUAL CORRECTION

The PSI, at ¶ 11, states that the defendants were "transported to the United

Sates, in the Southern District of Florida" on July 8, 2022. As this appears to be an

error, Mr. Gonzalez offers the following correction. The defendants were arrested at

sea by U.S. law enforcement on July 8, 2022. PSI, ¶ 5. After a little over two weeks,

they were first transported to the District of Puerto Rico, where they had initial

appearances on July 26, 2022, on Complaints filed in the Southern District of Florida.

*See United States v. Gonzalez et al.*, No. 22-mj-00874-GLS (D.P.R. July 26, 2022), DE

4. Mr. Gonzalez was ordered removed to this district on August 8, 2022. *Id.* at DE 20.

---

[1] Undersigned respectfully requests that the Court accept these objections filed three business days out of time. She inadvertently missed the deadline over the holidays and apologizes sincerely for her oversight.

However, he was only transported to this district on November 29, 2022, and brought to court for an initial appearance here on January 3, 2023. DE 9.

## LEGAL OBJECTIONS

### I.    The Safety Valve Provision Will Apply

Since the filing of the draft PSI, Mr. Gonzalez has provided the Government with the required safety valve statement. As is reflected at ¶ 19, he meets the other criteria for a safety valve reduction, and thus anticipates that the provision will apply. He thus objects to the current guideline calculation at ¶¶ 19, 30, and 65. Once safety valve is applied, the advisory range will be ***108 to 135 months***.

### II.    The Two-Level Minor Role Reduction Should Apply

Mr. Gonzalez also objects to the PSI's failure to apply a minor role reduction at ¶¶ 24 and 30. Under the Sentencing Guidelines, for those held accountable for participation in a drug trafficking conspiracy, the advisory range is calculated as follows. *First*, under Chapter 2, individuals who participate in such a conspiracy—no matter their role in that conspiracy—are initially ascribed a base offense level tied to the quantity of drugs for which they are responsible. *See* U.S.S.G. § 2D1.1(a)(5). *Second*, at Chapter 3, the Guidelines provide for upward or downward adjustments that do account for the person's role with regards that relevant quantity. For those who can be described as "minimal participants," meaning those "who are plainly among the least culpable of those involved in the conduct of a group" with regards to the relevant quantity, the guidelines provide for a four-level decrease. U.S.S.G. § 3B1.2(a). For those who are not "minimal participants," but "minor participants,"—

meaning they are "less culpable than most other participants in the criminal activity"—the Guidelines provide for a two-level decrease. § 3B1.2(b). This reduction should apply in this case.

Prior to 2015, the commentary to the minor role provision did not say much more than what is described above, other than to specify that a defendant held accountable only for the quantity he or she was personally involved in "is not precluded from consideration for an adjustment under this guideline." U.S.S.G. § 3B1.2(b)(2014). However, in 2015, the Sentencing Commission issued a series of amendments to the commentary, after finding that "mitigating role is applied inconsistently and more sparingly than the Commission intended." U.S.S.G. Supp. to App'x C, amend. 794 (Nov. 1, 2015). For example, "[i] drug cases, the Commission's study confirmed that mitigating role is applied inconsistently to drug defendants who performed similar low-level functions…with a low of 14.3 percent of couriers and mules receiving the mitigating role adjustment in one district compared to a high of 97.2 percent in another." *Id.*

Accordingly, the Commission made the following amendments to the commentary. *First*, the Commission more declaratively asserted that those held accountable only for the quantity with which they were personally involved "may receive" a mitigating role adjustment, after concluding that "the double-negative tone ("not precluded") may have had the unintended effect of discouraging courts from applying the mitigating role adjustment in otherwise appropriate circumstances." *Id.* *Second*, the Commission added specific factors to be considered in the fact-based

determination of whether to apply minor role: "(i) the degree to which the defendant understood the scope and structure of the criminal activity," "(ii) the degree to which the defendant participated in planning or organizing the criminal activity," "(iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making," "(iv) the nature and extent of the defendant's participation in the commission of the criminal activity," and "(v) the degree to which the defendant stood to benefit from the criminal activity." § 3B1.2(b) (2023), cmt. n. 3(C). *Third*, the Commission explicitly added the following example showing one intended application of the factors: "a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline." *Id. Fourth*, the Commission specified, the "fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative." *Id.* Here, the Commission observed that courts had routinely been relying on this factor, but according to the Commission, "a finding that the defendant was essential to the offense does not alter the requirement, expressed in Note 3(A), that the court must assess the defendant's culpability relative to the average participant in the offense." Supp. to App'x C, amend. 794.

Mr. Gonzalez's conduct in this case falls squarely within that contemplated by the minor role provision. He is an indigent fisherman from an abject background who has spent his life working hard to support and uplift his wife, children, and parents in a small part of the Dominican Republic. PSI, ¶ 39, 44-46, 56. He had no proprietary

4

interest in the drug quantity for which he is being held responsible, but was instead offered a discrete fee for a discrete task—assisting a three-man team in couriering drugs from Colombia to the Dominican Republic—that was part of the drug trafficking conspiracy. His case is thus identical to the example at cmt. n. 3(C). And an analysis of the 3(C) factors yields the same conclusion: minor role applies.

*First*, Mr. Gonzalez had little or no understanding of the scope or structure of the overarching criminal activity. He did not know who or how many individuals were involved in the distribution of the drugs he was given, what quantity he was given or what the loss of that quantity would mean or not mean to those who had a proprietary interest in it, from where and whom the drugs were procured or where and to whom they would be sold, or how decisions were made about when and how much to transport. Instead, here, Mr. Gonzalez was approached by one person and asked to perform a discrete task at a time and in a manner to be specified by that person. He was ultimately directed to stay at a camp in a foreign country among people who spoke a different language from him (the Wayuu tribal language) and his mandate was to wait until he was told that it was time to go. *Second*, he played no role in the planning or organizing of even the transport of the drugs, let alone in the conspiracy to traffic those drugs. Mr. Gonzalez was part of a three-person team that was selected by others to drive a boat that was secured, owned, and pre-packaged by others with an unknown quantity of drugs. He did not plan where the boat would leave from, when it would leave, where it would go, what route it would take, or how its cargo would be packed. *Third*, there were numerous respects in which Mr. Gonzalez had no

decision-making power whatsoever, including what vessel he took, when the vessel departed, where it left from or traveled to, what it carried, or even what route it took. He, together with two co-defendants selected by others, had the very limited ability to, perhaps, determine the pace they took while on the water together. In every other respect, the expectation was that they would follow instructions. *Fourth*, the nature and extent of Mr. Gonzalez's participation was limited to the discrete task of assisting in the transport of the vessel with his two co-defendants, as directed. He had no other role in the distribution of the drugs on board.

*Fifth*, Mr. Gonzalez was offered $40,000 for his conduct in this case. He never received any part of that fee, and there is no guarantee that he would have received it had he completed the task. Still, for purposes of assessing Mr. Gonzalez's role, it bears emphasis that even the full promised amount was nearly negligible when compared to the estimated street value of the drugs that were packed onto the vessel with him. Using the weight of the drugs as calculated at the DEA lab (813 kilograms), the street value was approximately $97,560,000,[2] meaning that the amount Mr. Gonzalez **was offered** for his role as to that relevant quantity was less than 0.00041 (or 0.041%) of the total value. Thus, substantially all of the $97 million value of the relevant quantity presumably would have gone to the many others who participated, and clearly had a more culpable role, in the distribution the particular quantity of

---

[2] The United Nations Office on Drugs and Crime estimated the 2019 street price of one gram of cocaine at $120. UNITED NATIONS OFFICE ON DRUGS AND CRIME, WORLD DRUG REPORT 2021: STATISTIC ANNEX 8.1 PRICE AND PURITY OF DRUGS 32 (2021), https://www.unodc.org/documents/data-and-analysis/WDR2021/8.1_Prices_an_purities_of_Drugs.pdf.

cocaine at issue. Mr. Gonzalez thus submits that the Sentencing Guidelines provide for a minor role reduction in his case.

A minor role reduction also would not be inconsistent with the Eleventh Circuit's ruling in *United States v. Rodriguez De Varon*, 175 F.3d 930 (11th Cir. 1999). In *Rodriguez De Varon*, the Eleventh Circuit, ruling without the benefit of the 2015 amendments, found that there was no clear error in a district court's denial of minor role as to a drug courier where she was held responsible for the quantity she transported and the record was that she was the less culpable among only two participants. *Id.* at 936-38. In so doing, the Eleventh Circuit observed that a district court's "ultimate determination of the defendant's role in the offense should be informed by two principles discerned from the Guidelines." *Id.* at 940. "First and foremost, the district court must measure the defendant's role against the relevant conduct for which she has been held accountable." *Id.* The Guidelines have not changed on this point, and Mr. Gonzalez does not asked the Court to evaluate his conduct differently. Under the Guidelines, Mr. Gonzalez is being held accountable for trafficking 813 kilograms of cocaine, and it is with regards to this conduct that he submits he had a minor role as a transporter. Before the 2015 Guidelines, *Rodriguez De Varon* noted, "We do not create a presumption that drug couriers are never minor or minimal participants, any more than that they are always minor or minimal. Rather, we hold only that the district court must assess all of the facts probative of the defendant's role in her relevant conduct in evaluating the defendant's role in the

7

offense." *Id.* at 943. The Court should thus rely on the 2015 guideline amendments to determine how to evaluate the facts in this particular case.

Per *Rodriguez De Varon*, "[t]he second principle we derive from the text of the Guidelines is that the district court may also measure the defendant's culpability in comparison to that of other participants in the relevant conduct." *Id.* at 944. Again, Mr. Gonzalez's argument is consistent with this principle—there are plainly numerous other individuals involved in the conspiracy to distribute the particular drugs at issue, including the owner of the boat, the owner of the drugs, the person who recruited Mr. Gonzalez, and many others who together stood to gain substantially all of the profits that might have been realized from the sale of the relevant drugs. Thus, a finding of minor role would not be inconsistent with either of the principles laid out in *Rodriguez De Varon*, which ultimately calls for a fact-intensive inquiry and does not preclude a fact-intensive inquiry that comports with the guidance of the 2015 amendments to the minor role provision.

\*     \*     \*

Should the Court grant the minor role reduction here, Mr. Gonzalez's guidelines calculation would be as follows: base offense level of 38, reduced to 34 (per § 2D1.1(a)(5)(A) and (B)(iii)); reduced to 32 under Chapter 3 for minor role; reduced to 30 under Chapter 4 since Mr. Gonzalez is a first-time, zero-point offender; reduced to 28 under Chapter 5 for safety valve,  and reduced to 27 for acceptance of responsibility. Given a criminal history category of I, *see* PSI ¶ 33, his advisory guideline range would be ***57 to 71 months***.

8

Respectfully Submitted,

**MICHAEL CARUSO**
**FEDERAL PUBLIC DEFENDER**

By:    */s/ Srilekha Jayanthi*
Assistant Federal Public Defender
Special A No. A5502728
150 W. Flagler Street, Suite 1700
Miami, Florida 33130-1556
Tel: (305) 530-7000
srilekha_jayanthi@fd.org

## CERTIFICATE OF SERVICE

      I HEREBY certify that on **January 2, 2024**, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

    */s/ Srilekha Jayanthi*