**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO.: 22-20350-CR-ALTMAN

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

ANGEL GABRIEL PALANCO, et al.,

        Defendant.

_____ /

## DEFENDANT POLANCO'S SENTENCING MEMORANDUM

The Defendant, Angel Gabriel Polanco, by and through his undersigned counsel, files this his Sentencing Memorandum and states as follows:

### INTRODUCTION

The Defendant is to be sentenced after he was found guilty of one count of conspiracy to possess with intent to distribute five (5) kilograms or more of cocaine while on board a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. § 70503(a)(1) and 70506(b), and possession with intent to distribute five kilograms or more of cocaine on board a vessel subject to the jurisdiction of the United States in violation of 46 U.S.C. § 70503(a)(1). The Defendant wishes to make minor corrections to the factual allegations in the Presentence Investigation Report ("PSI") and to object to the guideline calculations in the PSI. The Defendant will

1

also ask the Court to consider the 18 U.S.C. § 3553 factors and to sentence him below the recommended sentencing range.

The corrections and the objections in this sentencing memorandum will appear in the same order as the allegation or calculation appear in the PSI.

## CORRECTIONS TO THE FACTUAL ALLEGATIONS

Throughout the pleadings and in the PSI this Defendant has been referred to as "Palanco". The correct spelling of his last name is "Polanco".

Paragraph 11 of the PSI incorrectly alleges that Mr. Polanco was transported to the Southern District of Florida on July 8, 2022. Mr. Polanco was transported to the Southern District of Florida on November 29, 2022.

At paragraph 19 of the PSI, U.S. Probation correctly points out that as of the date that the PSI was drafted, U.S. Probation had not received a safety valve statement. However, that oversite was corrected on December 18, 2021 when counsel for the Defendant forwarded the statement to the A.U.S.A. and to U.S. Probation.

## OBJECTIONS TO THE GUIDELINE CALCULATIONS

The Defendant objects to sentencing calculations in the PSI. The bases of the Defendant's objection is grounded on U.S. Probation failing to categorize the Defendant as a minor participant in the conspiracy with the corresponding guideline

adjustments. The Defendant also objects to the U.S. Probation failing to recognize that Mr. Polanco qualifies for a safety value reduction.

The Defendant objects to the sentencing recommendation in the PSI inasmuch as it fails to assign him a minor role pursuant to U.S.S.G. §3B1.2(b) with the corresponding two-level reduction for such minor role. Application Note 3(C) under U.S.S.G. §3B1.2(b), provides as follows: (C) Fact-Based Determination. —The determination whether to apply subsection (a) or subsection (b), or an intermediate adjustment, is based on the totality of the circumstances and involves a determination that is heavily dependent upon the facts of the particular case. In determining whether to apply subsection (a) or (b), or an intermediate adjustment, the court should consider the following non-exhaustive list of factors: (i) the degree to which the defendant understood the scope and structure of the criminal activity; (ii) the degree to which the defendant participated in planning or organizing the criminal activity; (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority; (iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts; and (v) the degree to which the defendant stood to benefit from the criminal activity.

Examining the instant case in the framework suggested by Application Note 3(C) mandates a minor role adjustment in the instant case:

(i) In the instant case there is no evidence whatsoever that the Defendant understood the scope and structure of the criminal activity;

(ii) In the instant there is no evidence whatsoever that the Defendant participated in planning or organizing the criminal activity;

(iii) In the instant case there is no evidence whatsoever that the Defendant exercised decision-making authority or influenced the exercise of decision-making authority;

(iv) In the instant case the Defendant was merely recruited to be a deckhand aboard a drug smuggling vessel. There is no evidence whatsoever that the Defendant had any discretion in the manner in which he performed his conduct as a deckhand; and

(v) And finally, in the instant case the Defendant did not stand to profit based on the success of the cocaine smuggling venture. In other words he did not have a proprietary interest in the cocaine smuggling venture. The Defendant was to be paid for his work the amount of $20,000.00 US. However, Mr. Polanco received nothing.

The guidelines provide that "a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks

should be considered for an adjustment under this guideline." Application Note 3(A) also provides: "A defendant who is accountable under §1B1.3 (Relevant Conduct) only for the conduct in which the defendant personally was involved and who performs a limited function in the criminal activity may receive an adjustment under this guideline. For example, a defendant who is convicted of a drug trafficking offense, whose participation in that offense was limited to transporting or storing drugs and who is accountable under §1B1.3 only for the quantity of drugs the defendant personally transported or stored may receive an adjustment under this guideline."

The Defendant in the instant case is "merely a deckhand involved in one shipment of cocaine for a larger conspiracy and therefore less culpable than his co-conspirators." *United States v. Colorado,* 716 Fed. Appx. 922, 923 (11th Cir. 2017) The Court may be tempted to consider the quantity of drugs aboard the vessel as being determinative of the issue of role in the offense. In this regard, the Eleventh Circuit has spoken. Specifically, in the case of *United States v. Cruickshank,* 837 F.3d 1182, 1192 (11th Cir. 2016), cert. denied, 137 S. Ct. 1435 (2017), the Court remanded and instructed the district court to "perform an inquiry based on the totality of circumstances, taking into account the variety of factors laid out in [United States v. Rodriguez De Varon, 175 F.3d 930, 939 (11th Cir. 1999) (en banc)] and the guidelines commentary, and disapproved of the district court's suggestion that

because the quantity of drugs was so large that no one could qualify for a minor role reduction. *Id.* Later, in *United States v. Colorado,* 716 Fed. Appx. 922 (11th Cir. 2017) the Court held that because the district court relied on the single factor that "co-conspirators in a drug trafficking enterprise are all essential to the execution of the offense" to deny a minor role reduction, that "as in *Cruikshank*, we think the wisest course of action is to vacate Colorado's sentence and remand for resentencing". *Id at * 8.* On remand, the district court in *Colorado* was directed to perform an inquiry based on the totality of the circumstances, taking into account the factors set forth in the commentary to U.S.S.G. § 3B1.2. *Id.* Further, the fact that co-conspirators in a drug trafficking enterprise may be essential to the execution of the offense—cannot, under the guidelines, be determinative of whether to give a minor role reduction. *See U.S.S.G. § 3B1.2, cmt.n.3(C)* ("The fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative."). *United States v. Colorado*, 716 Fed. Appx. at 924. Although Application Note 3(A) under U.S.S.G. §3B1.2(b), provides, "[t]his section provides a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant in the criminal activity," the Court must perform this inquiry based on the totality of the circumstances.

6

In determining Mr. Polanco's role assessment in the instant case, U.S. Probation did not consider the totality of the circumstances as mandated by the Guidelines and the case law. On the contrary, U.S. Probation dedicated one brief paragraph to the subject in the PSI. That paragraph simply stated that:

> Osvaldo Gonzalez (Gonzalez), Humberto Vasquez Diaz (Vasquez), and Angel Gabriel Palanco (Palanco) conspired to possess with intent to distribute five kilograms or more of cocaine on board a vessel subject to the jurisdiction of the United States. Although the defendants refused to identify who was the master of the vessel, they indicated they all piloted the vessel. There is no substantiating evidence to establish a criminal hierarchy amongst the defendants. They are each accountable for approximately 817 kilograms of cocaine. Their roles in the offense do not warrant any aggravating or mitigating role adjustments.

This case is not as simple as U.S. Probation suggests. Had the Defendant been given an opportunity to debrief he would have provided the bigger picture of what the conspiracy entailed, however his offer to cooperate was declined because the agents did "not have any interest in cooperating defendants who also wish to aggressively litigate pending motions to dismiss." *Email from the A.U.S.A. to the Defendant's counsel dated July 7, 2023.* The Defendant was made to "decide how he wishes to proceed." *Id.* The Defendant was made aware that if "the government [was] required to prepare for evidentiary hearings which necessitate the presence of witnesses from within and/or outside the district, the agents will not be making time to meet with [him]. *Id.*

7

Had the Defendant been allowed to debrief the Government, and presumably U.S. Probation, would have known who had hired the Defendant, who arranged for the boat that the Defendant used to get to Columbia, where the Defendant stayed while in Columbia until it was his turn to begin the journey back to the Dominican Republic with the cocaine, and who the Defendant stayed with while in Columbia.

U.S.S.G. §3B1.2 makes a cross-reference to the definition of "participant" as set forth in Application Note 1 under U.S.S.G. §3B1.1. Specifically, "[a] 'participant' is a person who is criminally responsible for the commission of the offense, but need not have been convicted." It is submitted that the Court in applying the totality of the circumstances analysis should not ignore the fact that there are other individuals/participants involved in the planning and organizing the criminal activity, who clearly control the much higher-level organization behind this on-board lowly criminal conspiracy. In other words, the analysis should not be limited to identifiable or charged co-conspirators inasmuch as those other presently unnamed or unindicted individuals that are clearly organizers, leaders, managers, or supervisors, are criminally responsible for the commission of the offense as well.

It is the Defendant's position that he qualifies for a minor role reduction. As such the sentence recommendation should be 57 to 71 months. This recommendation is reach by starting with a base offense level of 38 which is reduced by 4 levels pursuant to U.S.S.G. § 2D1.1(a)(5)(A) and (B)(iii),  further reduced by 2 levels for

minor role pursuant to U.S.S.G. §3B1.2(b), reduced further by 2 levels as a zero point offender pursuant to U.S.S.G. § 4C1.1, reduced by two levels for "safety valve" pursuant to U.S.S.G. § 2D1.1(b)(18). Once a three-level reduction for acceptance of responsibility is applied pursuant to U.S.S.G. §3E1.1(a) and (b), the result is a total offense level of 25. With a total offense level of 25, and zero criminal history points, the recommended sentencing range would be 57 - 71 months.

**MOTION FOR A DOWNWARD VARIANCE**
**PURSUANT TO 18 U.S.C. § 3553**

Assuming that this Court accepts the Defendant's calculations and determines that the appropriate Total Offense Level is 24, the recommended sentencing range is still greater than necessary to achieve the purposes of sentencing. If the Court does not accept the defendant's calculations, the recommended sentencing range is draconian. As such, the Defendant asks the Court to grant a downward variance when sentencing him.

It is now well established that since *United States v. Booker*, 125 S. ct. 738 (2005), the sentencing guidelines are no longer mandatory. Instead now, a sentencing court is to consider the advisory sentencing guidelines, as well as 18 U.S.C. § 3553, when sentencing a defendant

Title 18 U.S.C. § 3553 provides:

(a)Factors to be considered in imposing a sentence.--The court shall impose a sentence sufficient, but not greater than necessary, to comply with the

purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed—

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

> ....

## NATURE AND CIRCUMSTANCES OF THE OFFENSE

Unfortunately, this offense has become rather common in the Southern District. Drug traffickers need to smuggle drugs. So they prey on the most vulnerable, least educated, and most desperate people and offer them what appears to be a significant amount of money to get them to travel on a go fast boat for days at a time and carry drugs for them. Most of the time people that get on these boats find themselves in desperate straits and the only way to survive is to take the chance that they will not die during the trip, or that they will not get caught. The ones that come before the Court are the ones that did not die.

The Defendant recognizes that the offense is a serious offense simply because of the sheer weight of the cocaine. Having said that, the Defendant asks the Court to

consider that he played a small part in this serious offense. He is but a crewmember on the go fast vessel that left Colombia and was traveling to the Dominican Republic with cocaine.

HISTORY AND CHARACTERISTICS OF THE DEFENDANT

The Defendant, as the PSI shows, is uneducated and unsophisticated. The Defendant is one of four siblings. The Defendant was born to his father Antonio Merette and his mother Damaris Martinez Polanco. The relationship between the Defendant's mother and farther ended when the Defendant was a small child. He was raised by his mother and his maternal grandfather who passed away from a motorcycle accident at the approximate age of 67 or 68 years of age. *See paragraphs 39 – 40 of the P.S.I.*

The Defendant describes his childhood as "difficult".  There were times when he only ate one meal a day. He started working as a shoeshine boy between the ages of 10 to 12 to contribute toward the household expenses. *See paragraph 41 of the P.S.I*

The Defendant failed to complete high school because of his need to work full time. *See paragraph 55 of the P.S.I*

Prior to his arrest the Defendant worked as a fisherman earning anywhere from $0 to $436 US, per month.  *See paragraphs 55 - 57 of the P.S.I.*  With that income he was attempting to maintain his three children. What he could not provide

with money, the Defendant attempted to compensate with attention. The Defendant was very involved in the lives of his children, spending as much time with them as he could. *See paragraphs 43 and 44 of the P.S.I.*

The Defendant was told he would made $20, 000.00 US, to transport drugs from Colombia to Dominican Republic. That amount represented more than what he would made in approximately 4 years working in the Dominican Republic, assuming he earned the maximum amount per month that he had earned working as a fisherman. Wanting to provide for his family, he took the risk of getting on a cocaine laden vessel and attempting to bring it to the Dominican Republic. Now he knows that he has to pay the price which includes going to prison. The Defendant knows that he will not be able to spend the time he used to spend with his children while he is in prison. He also knows that this is effecting them. *See paragraph 43 of the PSI.*

The Defendant is not making excuses. He knows he did wrong, and he has accepted responsibility for his actions. The Defendant does want the Court to understand why he made the decision he made and have the context needed for the Court to understand.

### THE NEED FOR THE SENTENCED IMPOSED TO REFLECT THE SERIOUSNESS OF THE OFFENSE AND TO PROMOTE RESPECT FOR THE LAW

The reason the Defendant did what he did was to provide for his family and to be able to survive. The most important things in the Defendant's life are his

children. The Defendant's ability to provide for his family and to be with them, has been taken away from him. That is only the beginning of the punishment the Defendant shall receive. He knows that he will receive a prison term. A term that will keep him away from what he values most. As a result the Defendant has already learned to respect the law. This is his first and last attempt to get on a go fast boat carrying drugs.

Additional evidence that the Defendant has learned respect for the law is the fact that he has attempted to cooperate with the Government and has tried to make amends for his actions. As noted above, the Defendant offered to be debriefed but not allowed to because he was exercising his legal right to seek dismissal of the case.

## TO AFFORD ADEQUATE DETERRENCE OF CRIMINAL CONDUCT

For the same reasons that the Defendant has learned respect for the law, he is deterred from breaking the law in the future. The Defendant will be taking advantage of the programs that will be available while in prison to better himself. U.S. Probation is recommending that the Defendant receive substance abuse treatment. The Defendant agrees that this would be beneficial for him.

## TO PROTECT THE PUBLIC

Once the Defendant completes his prison term he will be deported. This is the first time the Defendant has had any contact with the criminal justice system. Statistically he will not recidivate. Personally, he has learned respect for the law, and

13

he does not want to be deprived of his freedom again. There is no need to protect the public by giving the Defendant a lengthy prison term.

### TO PROVIDE THE DEFENDANT WITH NEEDED EDUCATIONAL OR VOCATIONAL TRAINING, MEDICAL CARE, OR OTHER CORRECTIONAL TREATMENT

The Defendant did not finish high school. The Defendant will benefit from the educational programs B.O.P. can offer. Clearly the Defendant seeks to improve himself and wants to be the productive member of society. He wants to be a better person when he gets out of prison, than when he went in.

WHEREFORE the Defendant prays that this Honorable Court sustain his objections to the PSI and further, grant his motion for downward variance and sentence him to a term of imprisonment not to exceed 57 months.

Respectfully submitted,

**Body Richards Parker & Colonnelli, P.L.**
*(Counsel for Defendant Angel Gabriel Polanco)*
100 S.E. 2nd Street, Suite 2600
Miami, Florida 33131
Tel. : (786) 425-1045

By: /s/ Manuel L. Casabielle, Esq.
**Manuel L. Casabielle, Esq.**
Florida Bar No. 353213
mcasabielle@boydlawgroup.com
For Service of Pleadings
ServiceMia@boydlawgroup.com

14

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed with the Clerk of Court using the EM/ECF Portal this 5th day of January 2024.

By: */s/ Manuel Casabielle*
**Manuel L. Casabielle, Esq.**
Florida Bar Number 353213